CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

BRANDON K. MOORE (MDBN 1312180261)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7181
brandon.moore@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERIC ANTHONY JONES,<br><br>Defendant. | Case No. 26-cr-00365-VC<br><br>MEMORANDUM IN SUPPORT OF THE UNITED STATES'S MOTION FOR DETENTION<br><br>Hearing Date: August 11, 2026<br>Hearing Time: 11:00 AM<br>Courtroom: E, 15th Floor |

## INTRODUCTION

This case involves an unusual circumstance: Two handguns, one bearing serial number BYMT216, the other bearing serial number AHNR657. At some point, the two handguns were disassembled. When reassembled, their slides and receivers were swapped, forming two mismatched firearms with the same two serials numbers, BYMT216 and AHNR657. Defendant Eric Anthony Jones possessed them both, years apart, while under court supervision both times. He had the second mismatched firearm after having received two prior firearm convictions.

As discussed further below, detention is appropriate because Jones's relationship with firearms, and his history of non-compliance and flight, pose a danger to the community and a risk of nonappearance. No conditions of release could adequately mitigate these risks.

## BACKGROUND

### I. The Offense

#### A. The Prior Offense: The First Mismatched Firearm.

The mismatched firearms date back to at least February 15, 2024. That day, San Francisco Police Department ("SFPD") officers surveilled Jones as he drove to multiple locations throughout the city. Jones was on pretrial release for an April 2023 firearm arrest. *See* San Francisco Superior No. 23006239. This did not, however, stop Jones from committing several burglaries. In some instances, officers saw Jones break into cars and steal expensive items within them. In other instances, they interviewed the victims after the crimes. Officers tried to arrest Jones by using spike strips to puncture his tires. When his car became inoperable, Jones abandoned it and ran on foot, leading officers on a brief foot chase. Jones discarded the first mismatched gun—a 9mm Glock handgun with BYMT216 on the receiver and AHNR657 on the slide—during the flight.

In 2025, Jones pled guilty to second-degree burglary with an enhancement for possessing the mismatched gun. He received a four-year sentence. *See* San Francisco Superior No. 24002797. On January 27, 2026, Jones completed his custodial sentence and started a three-year term on Postrelease Community Supervision ("PRCS"). Persons on PRCS must "obey all laws" and subject their person, residence, and possessions "to search at any time of the day or night, with or without a warrant." Penal Code §§ 3453(b), (f). They are strictly prohibited from being "in the presence of a firearm or ammunition, or any item that appears to be a firearm or ammunition." *Id.* § 3453(m).

#### B. Fairfield County Evasion.

At about 11:00 p.m. on April 3, 2026—just two months into Jones's PRCS term—a Lexus LS 460 registered to him (CA 9LZY680) led multiple law enforcement officers on a 20-mile high-speed chase. It began after a Fairfield police officer saw the Lexus make an abrupt, illegal left-hand turn, nearly colliding with another car in the opposite lane of traffic. The officer activated her emergency lights to initiate a traffic stop. Rather than stop, the Lexus sped away. As the Lexus failed to yield through several stop signs and red lights, another Fairfield officer joined the pursuit. Officers tried to reach the Lexus but stopped once it entered the highway and exceeded 100 miles per hour. It also concealed itself in the dark by turning off its headlights and taillights. California Highway Patrol officers

likewise joined the pursuit. Unable to catch up with the Lexus, the highway patrol officers punctured its tires with a spike strip. The Lexus nevertheless successfully sped away and evaded capture.

A Fairfield officer traced the Lexus's registration to Jones at his address on Dakota Street in San Francisco. After confirming the registration information with SFPD, she obtained a warrant to seize the Lexus.[1]

**C. The Instant Offense: The Second Mismatched Firearm.**

Four days after the evasion, Jones changed the Lexus registration from 9LZY680 to 9XYB010. SFPD officers, however, were familiar with Jones and knew that his Lexus was wanted by Fairfield police. On April 14, 2026, SFPD officers found the Lexus near Jones's residence on Dakota Street. They followed it until it parked near the 850 Bryant Street Courthouse. Jones, its lone occupant, emerged from the driver's seat. The officers detained Jones, who feigned ignorance about the evasion, and they performed an inventory search on the Lexus. Inside the glovebox, they found the second mismatched gun—a 9mm Glock handgun, this time, with BYMY216 on the slide and AHNR657 on the receiver.

///
///
///
///
///
///
///
///
///
///
///
///

[1] Under California Vehicle Code § 14602.7(a)(1), a police officer may obtain a judicial warrant to seize a vehicle if the officer establishes reasonable cause to believe the vehicle was involved in evading police.

Per Jones's PRCS conditions, officers collected DNA samples from him. A lab analysis found "very strong support" to include him as the major of four contributors on the firearm, with a 60% mixture proportion (the relative amount that a single person has contributed to the DNA) and a 4.91 quadrillion likelihood ratio (the likelihood that Jones versus a random person is the source of the DNA). There was also "very strong support" to include Jones as the major of four contributors on the ammunition, with a 54% mixture proportion and a 29.5 trillion likelihood ratio:

Item 8: Glock pistol grips and slide swabs
Number of contributors: 4 [Mixture ratio, 60:28:8:5]
Minimum number of males: 4
Assumed contributor(s): None
Individual(s) compared & results:

| Individual(s) | Mixture proportion | Proposition supported | Likelihood ratio | Verbal scale |
|---|---|---|---|---|
| Eric Jones | 60% | Inclusion | 4.91 Quadrillion | Very Strong Support |

The likelihood of obtaining these DNA results is at least 4.91 quadrillion times greater if the DNA originated from Eric Jones and three random, unrelated persons than if from four random, unrelated persons.

Item 9: Glock 9mm magazine and (13) CBC 9mm Luger cartridges from "chaimber" and magazine swabs
Number of contributors: 4 [Mixture ratio, 54:38:6:2]
Minimum number of males: 1
Assumed contributor(s): None
Individual(s) compared & results:

| Individual(s) | Mixture proportion | Proposition supported | Likelihood ratio | Verbal scale |
|---|---|---|---|---|
| Eric Jones | 54% | Inclusion | 29.5 Trillion | Very Strong Support |

The likelihood of obtaining these DNA results is at least 29.5 trillion times greater if the DNA originated from Eric Jones and three random, unrelated persons than if from four random, unrelated persons.

*Lap report showing "very strong support" to include Jones as a contributor to the pistol grips, slide, magazine, and ammunition.*

///

///

///

///

Upon learning the DNA results, SPFD officers executed a search warrant on the Lexus. In the glovebox, near where the firearm was found, they recovered, among other things, the 9LZY680 and 9XYB010 registrations (dated March 23, 2026, and April 7, 2026), as well as a smog inspection receipt with Jones's signature (dated March 23, 2026):




*The firearm (left), and car registrations and receipt in the glovebox (right).*

**D. Federal Arrest and Additional Firearms.**

On July 28, 2026, a grand jury in the Northern District of California returned an indictment charging Jones with felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). A federal arrest warrant was issued for Jones that same day.

Jones was charged in state court with offenses related to the second mismatched firearm. *See* San Francisco Superior No. 26008424. He had been released on pretrial supervision with electronic ankle monitoring.

On July 31, 2026, SFPD officers executed the federal arrest warrant by using Jones's ankle monitor to find him inside a store at the San Francisco Potrero Center. They conducted a PCRS search

of his Dakota Street residence. Two people—X.P.[2] and M.P.—shared the residence with Jones. In a nightstand in the living room, officers found a firearms case containing firearm parts, ammunition, and an empty high-capacity magazine.[3] In a kitchen cabinet, they found a box containing ammunition and two loaded magazines, as well as a Ziplock bag containing more ammunition. According to the incident report, it appears that officers found nearly 100 rounds of ammunition throughout the house. Officers got a warrant to search the rest of the residence and, under the mattress in M.P.'s bedroom, they found a stolen 40-caliber handgun bearing serial number XD257007 and a short-barreled AR rifle with no serial number.[4] DNA results for the firearms are pending:




*The items recovered from Dakota Street on July 31, 2026.*

---

[2] At the time of the search, X.P. was on probation and thus subject to his own search condition. In all likelihood, X.P.'s probation also prohibited him from possessing firearms.

[3] Penal Code §§ 16740 and 32310(c) make it illegal in California to possess a high-capacity magazine (defined as a magazine capable of accepting more than 10 rounds).

[4] Federal law requires all firearms to be identified by serial number. *See* 27 C.F.R. § 479.102(a)(1).

### E. Defendant's Criminal History

Since 2013, Jones has accumulated five felony convictions, two of which (both in 2025) involved firearms:

| Date | Court | Offense | Sentence |
|---|---|---|---|
| 10/17/13<br>(age 20)<br><br>10/02/14<br>(age 21)<br><br>09/29/15<br>(age 22)<br><br>03/07/17<br>(age 23) | San Mateo<br>Superior<br>(SC079261A) | 2nd Degree Burglary – Vehicle<br>(PC § 460(b))<br>(felony)<br><br>Revocation Of Probation<br><br>Revocation Of Probation<br><br>Probation Terminated as Unsuccessful | 5 months jail,<br>3 years prob.<br><br>3 years prob.<br><br>3 years prob.<br><br>8 months jail |
| 09/19/16<br>(age 23)<br><br>04/03/19<br>(age 25) | San Francisco<br>Superior<br>(15025582) | 2nd Degree Burglary (PC § 459)<br>(felony)<br><br>Probation Terminated as Unsuccessful | 36 months jail |
| 10/08/19<br>(age 26) | San Francisco<br>Superior<br>(18006968) | 2nd Degree Burglary (PC § 459)<br>(felony) | 539 days jail |
| 04/10/25<br>(age 31) | San Francisco<br>Superior<br>(23006239) | Felon/Addict Poss. Firearm<br>(PC § 29800(a)(1))<br>(felony)<br><br>Arrest: 04/27/23<br>Pretrial Release: 04/28/23 | 3 years prison,<br>3 years prob. |
| 04/10/25<br>(age 31) | San Francisco<br>Superior<br>(24002797) | 2nd Degree Burglary – Involve Firearm<br>(PC § 459)<br>(felony)<br><br>Arrest: 02/15/24 | 4 years prison |

Additionally, Jones has incurred multiple probation violations in separate cases. This has resulted multiple probation revocations (2014 and 2015), *see* San Mateo Superior No. SC079261A, and two different unsuccessful probation terminations in separate cases (2017 and 2019), *see* San Mateo Superior No. SC079261A, San Francisco Superior No. 15025582. His convictions also resulted in multiple sentences that exceeded one year in confinement (one in 2016, another in 2019, and two in 2025). *See* San Francisco Superior Nos. 15025582, 18006968, 23006239, and 24002797. Finally, Jones was on PCRS when he was found with the second mismatched firearm. He was on two different types of court supervision (PCRS and pretrial release with electronic monitoring) when officers found firearms and ammunition in the Dakota Street residence that he shared with X.P. and M.P.

**LEGAL STANDARD**

Under the Bail Reform Act, the Court must detain a defendant pretrial without bail if finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The Rules of Evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well-

settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in an offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

## ARGUMENT

Jones has now been found repeatedly with or near firearms and ammunition despite multiple, sometimes overlapping conditions of supervision prohibiting that conduct and despite two prior firearms convictions. Convictions have not stopped him. Lengthy sentences have not stopped him. Court supervision has not stopped him. Given this history, and the illegal firearms at the Dakota Street residence in July 2026, no conditions will reasonably assure the safety of the community or his appearance at future court dates.

### A. Danger to the Community.

All four dangerousness factors support detention. *First*, the nature and circumstances of the charged offense are serious. Jones, a five-time convicted felon, newly on PCRS, was found with a loaded firearm within arm's reach in the glovebox. At this time, no evidence suggests that Jones used the firearm before its recovery. But it was loaded and readily accessible, suggesting a willingness to use it if needed.[5] Having a concealed, loaded firearm at the ready in a vehicle dramatically increases the risk of impulsive gun violence during a road rage incident or a minor dispute. It increases the risk to officers during routine traffic stops. And it emboldens other criminal conduct, like Jones's burglary spree in 2024 or the Lexus's flight from Fairfield police.

*Second*, the weight of the evidence against Jones is strong. Solid evidence establishes physical possession. The instant offense is the second time in two years that Jones has been found with a firearm bearing serial numbers BYMY216 and AHNR657, as he admitted to possessing the first mismatched firearm as part of his 2025 burglary conviction. The firearm was in a vehicle registered to him. He was the vehicle's sole occupant. And his DNA was on the firearm and ammunition. This same evidence

[5] To transport a firearm in a vehicle in California, the firearm must be unloaded and locked inside a container. *See* Penal Code § 25610(a).

undermines likely counterarguments. For instance, having the same serial numbers multiple times diminishes the probability of an accident or mistake. The robust DNA mixture proportions and likelihood ratios for the instant offense suggest that Jones meaningfully handled the firearm. This was not temporary or harmless possession. That Jones is the majority contributor weakens a claim that someone else put it there. Two car registrations and a receipt with his signature from March and April 2026 were in the glovebox next to the firearm. It would be incredible, under that circumstance, to claim that he had lawfully possessed the firearm at an earlier date and had simply forgotten about it after becoming prohibited. That would require an inference that someone else repeatedly placed his documents (including one with his signature) in his glovebox with the gun in plain sight.

*Third*, Jones's history and characteristics reveal a refusal to comply with conditions of court supervision. When possessing the April 2026 firearm, he had a PCRS condition that not only prohibited him from possessing a firearm, it prohibited him from being "in its presence." When possessing the February 2024 firearm, Jones was on pretrial release for a previous firearms arrest. This did not, however, stop him from breaking into several cars, stealing from them, and possessing a firearm to facilitate the burglaries. Multiple firearms convictions in 2025, and the sentences that followed, did not stop him from possessing another firearm in 2026. In the years leading up to those firearms convictions, Jones had multiple probation revocations and multiple terms of probation end in unsuccessful termination. His conduct continued undeterred.

The concerning behavior continued until Jones's most recent arrest in July 2026, when officers found dozens of rounds of ammunition throughout his residence and two illegal firearms under M.P.'s mattress. To be fair, absent DNA results, which are still pending, there is no direct evidence that Jones possessed those firearms or that ammunition. But the circumstances are concerning: (1) the ammunition was located throughout the house, including common areas accessible to Jones; (2) Joned has a demonstrated history of non-compliance; (3) he also has a demonstrated history of firearm possession, evidenced by his two prior firearms convictions; (4) two people in the residence (Jones and X.P.) were presumably prohibited from possessing firearms due to court supervision; (5) both firearms were unlawful by virtue of being stolen or having no serial number; and (6) an illegal high-capacity magazine was among the contraband. Those same concerns make the Dakota Street residence an unsuitable

location should Jones be released on bond here, and neither X.P. nor M.P. are suitable third-party custodians or sureties.

*Fourth and finally*, there is a serious risk to the community, given that this is Jones's third and fourth association with firearms since 2023. Within that same period, this would also be the second and third time he has been found with or near firearms and ammunition while under court supervision. A firearms conviction for the instant offense would be his third firearms conviction in two years.

**B. Risk of Nonappearance.**

Because the risk of nonappearance is proven by a preponderance, I note that there have been multiple incidents where Jones has been accused of flight. A foot chase in February 2024 ended with Jones's apprehension. A car chase in April 2026 ended with his vehicle evading Fairfield police. Although the Fairfield officers did not see who drove the Lexus, Jones changed his registration shortly after the event, then feigned ignorance when stopped by SFPD. Both actions indicate consciousness of guilt.

## CONCLUSION

For those reasons, there is no set of conditions that will reasonably ensure the safety of the community or Jones's appearance. Detention is appropriate under these circumstances.

DATED: August 10, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Brandon K. Moore*
BRANDON K. MOORE
Assistant United States Attorney